UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHAHAB KHAN,

                                        Plaintiff,                    9:25-CV-0382
                                                                          (AMN/DJS)
                    v.

DANIEL F. MARTUSCELLO, III,

                                        Defendant.

---

APPEARANCES:                                                OF COUNSEL:

SHAHAB KHAN
Plaintiff, pro se
24-R-0052
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051

ANNE M. NARDACCI
United States District Judge

## DECISION AND ORDER

## I.      INTRODUCTION

On March 26, 2025, pro se plaintiff Shahab Khan ("plaintiff") commenced this action by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), with an application to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application").  The complaint contained claims against defendant Daniel F. Martuscello, III ("Martuscello") arising out of plaintiff's confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Greene Correctional Facility ("Greene C.F.").  *See generally* Compl.

By Decision and Order filed on May 22, 2025 (the "May 2025 Order"), the Court granted plaintiff's IFP Application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Dkt. No. 9. The Court found that the complaint failed to state a claim and dismissed all claims, without prejudice. *See id*. In light of plaintiff's pro se status, he was afforded an opportunity to file an amended complaint. *See id*.

On July 14, 2025, plaintiff filed an amended complaint. Dkt. No. 11 ("Am. Compl.").

## II.    SUFFICIENCY OF AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A was discussed at length in the May 2025 Order and will not be restated in this Decision and Order. *See* Dkt. No. 9 at 2-4.

### B.  Summary of Amended Complaint[1]

With the amended complaint, plaintiff identifies the following defendants: Martuscello; RPA-C Brady E. Devlin ("Devlin"); Carol Moores, MD ("Moores"); Mary Anne Lyons ("Lyons"); Doctor Doe, Ulster Correctional Medical Department ("Ulster Dr. Doe"); Director Doe, Ulster Correctional Medical Department ("Director Doe"); Doctor Doe, Otisville Correctional Medical Department ("Otisville Dr. Doe"); John/Jane Doe Medical Staff, Otisville Correctional Facility; John/Jane Doe Medical Staff Gouverneur Correctional Facility; and Doctor Doe, Gouverneur Correctional Facility ("Gouverneur Dr. Doe").[2] *See generally* Am. Compl.

---

[1]  The amended complaint includes exhibits. *See* Dkt. No. 11-1. To the extent that the exhibits are relevant to the incidents described in the amended complaint, the Court will consider the amended complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[2]  The Clerk of the Court is directed to amend the Docket Report to include the new defendants.

In 2023, while plaintiff was confined at Rikers Island, he was treated for sleep apnea. Am. Compl.; Dkt. No. 11-1 at 2-10, 12-20, 22-23.

On January 5, 2024, plaintiff was transferred to Ulster Correctional Facility ("Ulster C.F."). Am. Compl. at 5. Plaintiff told "health services staff" that he suffered from sleep apnea. *Id.* Jane/John Doe indicated plaintiff would need to undergo a sleep study, even though he completed a sleep study three months prior, while confined at Rikers Island. *Id.* Plaintiff was not provided with a CPAP machine or with treatment for sleep apnea despite complaining "several time to the health services staff." *Id.*

On January 19, 2024, plaintiff was transferred to Gouverneur Correctional Facility ("Gouverneur C.F."). Am. Compl. at 5. Plaintiff told Jane/John Doe, medical staff, about his medical condition.[3] *Id.*

In March 2024, plaintiff was transferred to Otisville Correctional Facility ("Otisville C.F.") and complained to multiple Jane/John Does about his severe sleep apnea. Am. Compl. at 6. In October 2024, plaintiff underwent a sleep study. *Id.*, Dkt. No. 11-1 at 24-26. The study revealed that plaintiff stopped breathing "over 200 times a night." Am. Compl. at 6.

On December 21, 2024, plaintiff was transferred to Green Haven Correctional Facility ("Green Haven C.F."). Am. Compl. at 6. Plaintiff made several complaints to unidentified individuals but was not provided with treatment or a CPAP machine. *Id.*

On January 19, 2025, plaintiff was transferred to Greene C.F. Am. Compl. at 6. Plaintiff complained to Devlin and John/Jane Does in the "health services." *Id.* Devlin said, "make a friend [ ] wake you up when you stop breathing at night." *Id.*

---

[3] Plaintiff claims that Correctional Officers "could verify" that he "stop[ped] breathing" at night. Am. Compl. at 5. The officers, however, are not identified as defendants in the caption or list of parties.

In April 2025, plaintiff received a CPAP machine.  Am. Compl. at 6.

Plaintiff claims he suffered from sleep deprivation, choking and coughing, and "fighting for air" which he "told to the defendants."  Am. Compl. at 7.

Construing the amended complaint liberally[4], plaintiff alleges Eighth Amendment deliberate medical indifference claims.  *See generally* Am. Compl.  Plaintiff seeks monetary damages.  *Id*. at 10.  For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the amended complaint.

## C.  Analysis

### 1.  Severance and Transfer of Claims Related to Rikers Island, Otisville C.F., and Green Haven C.F.[5]

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim against a party and proceed with that claim separately.  Fed. R. Civ. P. 21.  In deciding whether to sever a claim, a court should consider the following:

> whether the claims arise out of the same transaction or occurrence; whether the claims present some common questions of law or fact; whether settlement of the claims or judicial economy would be facilitated; whether prejudice would be avoided if severance were granted; and whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

---

[4] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[5] While plaintiff does not identify any individuals associated with Rikers Island or Green Haven C.F. as defendants in the caption or list of parties, in deference to his pro se status, the Court will address potential claims arising from plaintiff's confinement at those facilities.

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer.  Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants."  *Cain v. New York State Bd. of Election*s, 630 F.Supp. 221, 225-26 (E.D.N.Y. 1986).  "A decision to sever lies within the discretion of the Court."  *Id.* at 225.

Here, plaintiff's claims related to alleged wrongdoing that occurred while he was confined at Rikers Island, Otisville C.F., and Green Haven C.F. are more appropriately heard in the Southern District.  Those claims are separate and distinct from the claims arising out of alleged wrongdoing that arose while plaintiff was confined at Ulster County C.F., Gouverneur C.F., and Greene C.F. and will require different witnesses and documentary proof.  The remainder of the factors also weigh in favor of severance.

Thus, pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), the claims that arose while plaintiff was incarcerated at Rikers Island, Otisville C.F., and Green Haven C.F. in the Southern District, along with the defendants associated with those claims, are severed from this action, and transferred to the Southern District.

This District will retain jurisdiction over the claims that arose, if at all, while plaintiff was incarcerated at Ulster County C.F., Gouverneur C.F., and Greene C.F. and will therefore review the sufficiency of those claims.  No position is taken on the sufficiency of the claims that have been severed and will be transferred to the Southern District; that determination is left to the Southern District.

### 2.  Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, *see* Compl. at 2, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the

official is entitled to invoke the Eleventh Amendment immunity belonging to the state.");

*Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh

Amendment does not permit suit [under Section 1983] for money damages against state

officials in their official capacities.").

### 3. Deliberate Medical Indifference

As a convicted and sentenced prisoner at the time of the acts alleged in the amended

complaint, plaintiff is protected from the imposition of cruel and unusual punishment afforded

by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  The Eighth

Amendment mandates that prison officials provide adequate medical care to inmates.  *See*

*Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011).  "An Eighth Amendment claim arising out

of inadequate medical care requires a demonstration of deliberate indifference to a prisoner's

serious medical needs."  *Id*. (internal quotation marks omitted).

An Eighth Amendment claim for medical indifference, has two necessary components,

one objective and the other subjective.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.

1996).  "First, the alleged deprivation must be, in objective terms, sufficiently serious."

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1988) (internal quotation marks and

citations omitted).  In this regard, a plaintiff must demonstrate a violation sufficiently serious

by objective terms, "in the sense that a condition of urgency, one that may produce death,

degeneration, or extreme pain exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.

1996).  Second, with respect to the subjective element, medical mistreatment rises to the

level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a

failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.' "

*Chance*, 143 F.3d at 703 (quoting *Hathaway*, 99 F.3d at 553).  Thus, to establish deliberate

indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Chance*, 143 F.3d at 702–703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835.

Even assuming plaintiff's medical condition constitutes a serious medical need, *see Griffin v. Amatucci*, No. 9:11-CV-1125 (MAD/TWD), 2013 WL 1294587, at *4 (N.D.N.Y. Feb. 25, 2013), *report and recommendation adopted,* 2013 WL 1294580 (N.D.N.Y. Mar. 26, 2013), the amended complaint lacks sufficient facts to plausibly suggest that any defendant consciously disregarded a substantial risk to plaintiff's health.

### a.  Claims Against Martuscello, Moores, Lyons, Ulster Dr. Doe, Director Doe, and Gouverneur Dr. Doe

The law related to personal involvement in Section 1983 actions was discussed in the May 2025 Order and will not be restated herein. *See* Dkt. No. 9 at 5-6. In the May 2025 Order, the Court dismissed plaintiff's claims against Martuscello reasoning:

> Martuscello is not referenced anywhere in the body of the complaint and the pleading lacks factual allegations sufficient to plausibly suggest that Martuscello was personally involved in conduct that violated plaintiff's constitutional rights. Specifically, plaintiff does not allege that Martuscello was involved in, or aware of, plaintiff's medical treatment, that he complained to Martuscello about the medical care, or that he spoke with, wrote to, or had any interaction with Martuscello. Thus, the complaint fails to state a cognizable claim against Martuscello.

Dkt. No. 9 at 6.

The amended complaint does not cure the deficiencies in plaintiff's claim against Martuscello. Moreover, while Moores, Lyons, Ulster Dr. Doe, Director Doe, and Gouverneur

Dr. Doe are identified as defendants, these individuals are not referenced in the body of the amended complaint and the pleading lacks allegations that would allow the Court to infer that defendants were personally involved in any violation of plaintiff's constitutional rights.

Accordingly, for the reasons set forth in the May 2025 Order, plaintiff's claims against Martuscello, Moores, Lyons, Ulster Dr. Doe, Director Doe, and Gouverneur Dr. Doe are dismissed.

### b.  Claims Against Ulster C.F. Medical Staff, Gouverneur C.F. Medical Staff, and Devlin

With regard to the Doe Medical Staff, while plaintiff makes broad statements about his lack of treatment for sleep apnea, plaintiff has provided few facts, if any, related to plaintiff's interaction(s), conversations, or treatment with the named defendants including when he requested treatment, how often he requested treatment, and defendants' response, if any, to his requests.  *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 WL 807071, at *29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants).

Similarly, with regard to Devlin, plaintiff claims he complained about his "severe sleep apnea."  *See* Am. Compl. 6.  However, the pleading lacks facts related to when and how often plaintiff complained to Devlin.  More importantly, plaintiff does not describe his complaints to Devlin in any detail.  Thus, as presently plead, the amended complaint does not support the inference that Devlin intentionally disregarded or ignored a serious medical need. *See Santana v. City of New York*, No. 13 CIV. 3034 SAS, 2014 WL 1870800, at *7 (S.D.N.Y. May 8, 2014) (finding that the plaintiff did not advise the defendants that he was in pain and

his subjective beliefs about his condition failed to suggest that his sleep apnea was a life-threatening illness).

Plaintiff concedes that he received a CPAP machine 2 ½ months after he arrived at Greene C.F.  To the extent that plaintiff attempts to assert an Eighth Amendment claim based upon the delay in receiving the CPAP machine, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim."  *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citation and internal quotation marks omitted).

Here, even assuming Devlin was personally involved in the decision to delay providing a CPAP machine, the pleading lacks facts suggesting that the delay significantly affected plaintiff's daily activities or caused him chronic and substantial pain.  *See Santana v. Watson*, No. 13 CIV. 1549, 2014 WL 1803308, at *5 (S.D.N.Y. May 6, 2014) (reasoning that there was "no indication that Santana's health declined during the time he was without a CPAP machine, or that the temporary deprivation significantly affected his daily activities); s*ee also Guishard v. Gregory*, No. 9:19-CV-1475 (MAD/ATB), 2022 WL 4077985, at *2 (N.D.N.Y. Sept. 6, 2022) (dismissing Eighth Amendment claim where the plaintiff failed to present any evidence from which a reasonable factfinder could conclude that the four-month delay in obtaining a CPAP exacerbated his medical condition or presented a serious medical need or risk to his health).

For these reasons, plaintiff's Eighth Amendment deliberate medical indifference claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**IV.    CONCLUSION**

**WHEREFORE, it is hereby**

**ORDERED** that the amended complaint (Dkt. No. 11) is **ACCEPTED** for filing and is the operative pleading in this action; and it is further

**ORDERED** that the Clerk of the Court shall amend the Docket Report consistent with this Decision and Order; and it is further

**ORDERED** that pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), all claims related to Rikers Island, Otisville C.F., and Green Haven C.F. are severed and transferred to the Southern District of New York; and it is further

**ORDERED** that no ruling is made as to the sufficiency of the complaint with respect to the claims that have been severed and transferred to the Southern District, leaving that determination to the Southern District of New York; and it is further

**ORDERED** that the Clerk shall advise the Clerk of the Southern District of New York, in writing, of the entry of this Decision and Order and provide the Clerk with a certified copy of this Decision and Order and of the docket report for this action, together with all information necessary for the Clerk of the Southern District of New York to electronically access the documents filed in this action; and it is further

**ORDERED** that the fourteen (14) day waiting period provided for in Local Rule 83.6 is hereby waived; and it is further

**ORDERED t**hat the amended complaint is **DISMISSED** in accordance with 28 U.S.C.

§ 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on

plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**


Dated: <u>August 18, 2025</u>
     Albany, NY

Anne M. Nardacci
U.S. District Judge